1  Scott Edelsberg (SBN 330090)
   **EDELSBERG LAW PA**
2  1925 Century Park East, Suite 1700
   Los Angeles, CA 90067
3  Tel: 305-975-3320
   Email: scott@edelsberglaw.com
4
   Jeffrey D. Kaliel (SBN 238293)
5  jkaliel@kalielpllc.com
   **KALIELGOLD PLLC**
6  6 1100 15th Street., NW, 4th Floor
   Washington, D.C. 20005
7  7 Tel: (202) 350-4783
8  Sophia Goren Gold (SBN 307971)
   sgold@kalielgold.com
9  **KALIELGOLD PLLC**
   950 Gilman Avenue, Suite 200
10 Berkeley, California 94710
   Tel: (202) 350-4783
11
   *Attorneys for Plaintiff and the Proposed Class*
12

13

14                    **UNITED STATES DISTRICT COURT**
15                    **CENTRAL DISTRICT OF CALIFORNIA**

16
   SONIA ZELAYA, *individually and on*          Case No.: 2:23-cv-02132 -DSF-RAO
17 *behalf of all others similarly situated*,

18         Plaintiff,                            **FIRST AMENDED CLASS ACTION**
19         vs.                                   **COMPLAINT**

20                                               **CLASS ACTION**
   THE SHERWIN-WILLIAMS COMPANY,
21                                               **DEMAND FOR JURY TRIAL**
           Defendant.
22

23

24

25

26

27
                                    - 1 -
28 ─────────────────────────────────────────────────────

1    Plaintiff Sonia Zelaya, individually and on behalf of all others similarly situated, complains

2    and alleges upon information and belief based upon, among other things, the investigation made by

3    Plaintiff and through her attorneys as follows:

4                                    **NATURE OF ACTION**

5    1.    This is a proposed class action seeking monetary damages, restitution, and injunctive

6    and declaratory relief from Defendant The Sherwin-Williams Company ("Sherwin- Williams" or

7    "Defendant"), arising from its deceptive bait-and-switch scheme of covertly adding a so-called 4%

8    "Supply Chain Charge" on sales receipts after purchases are consummated.

9    2.    Throughout its stores, and like all retailers, Sherwin-Williams provides prominent

10   price displays for each of its products. Reasonable consumers like Plaintiff understand those are the

11   true and complete prices for the products, exclusive of government-imposed taxes and discounts

12   that a customer may be eligible for.

13   3.    But Sherwin-Williams' in-store displays are not the true prices for those products. In

14   fact, the true prices are 4% higher than listed. That is because, after consumers select in-store items

15   based on listed prices and customize those in-store items with colors and other specifications, and

16   after the purchase process is substantially complete, Defendant surreptitiously imposes a so-called

17   "Supply Chain Charge" as a line item on receipts, amounting to an additional 4% added to the in-

18   store prices on all purchases. This late addition of a so-called "Supply Chain Charge" substantially

19   changes the in-store prices upon which Plaintiff and other purchasers rely while shopping.

20   4.    Worse, the so-called "Supply Chain Charge" is never reasonably disclosed to

21   consumers until it shows up as a line item on their receipts—*after the purchase is complete*.

22   5.    Moreover, the "Supply Chain Charge" is itself a misnomer and a deception.

23   Defendant knows full well that average consumers do not understand the meaning of the term

24   "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable

25   consumers are not economists.

26   6.    Sherwin-Williams intentionally chose a technical-sounding term in order to falsely

27   convey to consumers that it was passing through an out-of-pocket cost it paid.  That was false.

28

FIRST AMENDED CLASS ACTION COMPLAINT

Sherwin-Williams did not pay the "supply chain" an additional 4%. Rather, the fee disguises a simple truth: Sherwin-Williams wanted to raise prices on all of its products, uniformly.

7.     Of course, Sherwin-Williams is free to raise prices as much as it chooses and for whatever reasons it chooses. However, raising prices under the guise of a "Supply Chain Charge" was false and deceptive: here, the company raised prices without actually changing its listed prices in store, in order to make its products appear less expensive than they actually were.

8.     Defendant's triple-edged deception—first, touting in-store prices that are false; second, misdescribing its in-store price inflation as a "Supply Chain Charge"; and third, never reasonably disclosing the "Supply Chain Charge" until after a purchase is complete (and only then, only on a small line item on a receipt)—gives it an unfair advantage over honest sellers in the marketplace. The triple-edged deception makes it impossible for consumers to comparison shop meaningfully, and hinders the operation of a free and fair marketplace.

9.     Plaintiff seeks damages and, among other remedies, injunctive relief that fairly allows customers to decide whether they will pay Sherwin-Williams' Surcharge.

## PARTIES

10.     Plaintiff Sonia Zelaya is a citizen of the State of California who resides in Pomona, California.

11.     Defendant Sherwin-Williams is incorporated in Ohio and maintains its principal business offices in Cleveland, Ohio. Defendant regularly conducts business in the Central District of California by operating at least 18 Sherwin-Williams stores located throughout the District.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because of the following: (1) the proposed class is comprised of at least 100 members; (2) Plaintiff is a citizen of California, making at least one member of the proposed class a citizen of a different state than Defendant; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs.

FIRST AMENDED CLASS ACTION COMPLAINT

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Sherwin-Williams is subject to personal jurisdiction here and regularly conducts business in this District. Also, a substantial portion of the events or omissions giving rise to the claims asserted herein occurred in this District.

## COMMON FACTUAL ALLEGATIONS

**A. Sherwin-Williams Omits and Conceals Material Facts About the Total Cost of Purchases by Deceptively Tacking on a Surcharge to All Items**

14.     On September 28, 2021, Sherwin-Williams's Chairman, President, and Chief Executive Officer, John G. Morikis, made a public statement to its investors that manufacturing costs were rising due to the limited availability of raw materials.[1]

15.     In other words, paint and other items were becoming more expensive to manufacture and produce—their price was increasing.

16.     Instead of raising the advertised prices of its individual items for sale, Defendant began tacking on a 4% Surcharge to all items purchased by customers at each of their Sherwin-Williams stores across the country.

17.     By furtively adding a hidden Surcharge onto each item offered for sale in its stores, Sherwin-Williams unfairly obscured the true price of each item.

18.     Reasonable consumers like Plaintiff understand the advertised prices are the <u>true</u> <u>and complete prices for the products</u>, exclusive of government-imposed taxes and discounts that a customer may be eligible for.

19.     As the Los Angeles times reported, "'Hidden surcharges undermine consumers' ability to shop around for the best value for their money,' said Jenn Engstrom, state director for the California Public Interest Research Group."

---

[1] *Despite Strong Demand, Sherwin-Williams Lowers Third Quarter and Full Year 2021 Sales and Earnings Expectations Amid Escalating Raw Material Availability Challenges and Inflation Headwinds; Announces Agreement to Expand Internal Resin Manufacturing Capabilities,* Sherwin-Williams, September 28, 2021, available at https://investors.sherwin-williams.com/press-releases/press-release-details/2021/Despite-Strong-Demand-Sherwin-Williams-Lowers-Third-Quarter-and-Full-Year-2021-Sales-and-Earnings-Expectations-Amid-Escalating-Raw-Material-Availability-Challenges-and-Inflation-Headwinds/default.aspx, (last accessed March 4, 2022).

1    20.    Sherwin-Williams' scheme prevented consumers from effectively comparison
2  shopping.

3    21.    Indeed, at its stores, Sherwin Williams prominently advertises the price of all of its
4  products on its shelves and in other displays.

5    22.    These price representations are important: as Sherwin Williams knows, price is
6  extremely important to consumers in choosing whether to buy a product or take their business
7  elsewhere.

8    23.    For consumers shopping for paint specifically, a selection is made and the paint can
9  then be customized by color or other characteristics.

10   24.    At checkout, the products are then scanned and totaled at the register. The scanned
11 price matches the price displayed on the shelves. Tax is added, any coupons are deducted, and a
12 total price is then displayed to customers. The customer pays.  A receipt is provided.

13   25.    Unbeknownst to consumers, however, Sherwin Williams quietly adds a 4% "Supply
14 Chain Charge" at the register, at the same time it adds tax.

15   26.    The "Supply Chain Charge" is never reasonably disclosed to consumers until it
16 shows up as a line item on their receipts—after the purchase is complete. This process fails to
17 provide an adequate advance warning to customers that a Surcharge will be imposed on their
18 purchases.

19 **B.  The Name of the Supply Chain Charge is Deceptive**

20   27.    Moreover, the "Supply Chain Charge" is itself a misnomer and a deception.
21 Defendant knows full well that average consumers do not understand the meaning of the term
22 "supply chain" nor the indirect effect that economists understand it has on prices. Reasonable
23 consumers are not economists.

24   28.    Sherwin-Williams intentionally chose a technical-sounding term in order to falsely
25 convey to consumers that it was passing through an out of pocket cost it paid. That was false.
26 Sherwin-Williams did not pay the "supply chain" an additional 4%. Rather, the fee disguises a
27 simple truth: Sherwin-Williams wanted to raise prices on all its products, uniformly.

28

29. In fact, the "surcharge" should simply have been labelled truthfully: "Price Increase Surcharge."

**C. Numerous Consumer Complaints Confirm the Deception**

30. Numerous customers report being surprised by the Surcharge. As the Los Angeles Times has reported,

> Hugo Granadino recently stopped by the Sherwin-Williams paint store in Inglewood to pick up some rollers and brushes. He's repainting the den of his South Los Angeles home. After the purchase, Granadino, 40, took a look at his receipt and was surprised to see a 4% "supply chain charge." There'd been no advance warning that a surcharge was being imposed — it was just quietly tacked on at the checkout counter.

https://www.latimes.com/business/story/2021-10-14/column-pandemic-paint-surcharge.

31. Likewise, an Arkansas news periodical reported the same issue:

> Camilla Kinslow bought paint from the Sherwin Williams in Russellville. After she left, she noticed an additional charge on her receipt: a 4% supply chain surcharge. "I was kind of frustrated, because I was like, 'How can they do this? How can people just do that,'" said Kinslow.

https://www.thv11.com/article/news/local/customers-see-surcharges-supply-chain-impacts-businesses/91-5bc77cba-e302-4442-9a8f-f47a2448114b.

32. Similarly in Houston, the media has reported the same surprise by consumers:

> Construction company owner Brennan Dougherty said he only noticed the extra cost when he looked at his receipt after buying paint. "Wow, they're just flat out, busting it out on the receipt, 4%," said Dougherty. "Obviously if it was a bigger job it affects you a lot more. But 4% on a million dollar job is $40,000."

https://abc13.com/supply-chain-surcharge-sherwin-williams-and-demand-costs/11229601/.

33. Numerous other complaints from online forums confirm consumers feel misled by the imposition of the surcharge. Such as this deceived consumer on Yelp:

> Rip off! They charged me an additional 4% [without] telling me (supply chain charge) I wouldn't mine [sic] paying extra if they didn't hid[e] it.

https://www.yelp.com/biz/sherwin-williams-paint-store-asheville 2?adjust_creative=mapquest&hrid=Rf4HBez5gd822SoS2jWYg&utm_campaign=yelp_feed&utm_medium=feed_v2&utm_source=mapquest (last accessed June 20, 2022).

34.    Also, consider this consumer complaint to the Better Business Bureau:

> Sherwin Williams sneakily charged me a supply chain charge of 4 percent on each of my purchases. They did not inform me of this charge at the register nor did they have any signs up detailing the charge. They would not allow me to return the "premixed" paint. This is underhanded and wrong not to inform the customer of this charge and allow me to make a decision to void the purchase.

https://www.bbb.org/us/oh/cleveland/profile/producers/the-sherwin-williams-company-0312-6651/complaints.

35.    Consumers have also flocked to Twitter to express their concerns over the sneakily tacked-on surcharge:

> @SherwinWilliams why not be upfront about it? Just raise the base cost of the paint by 4%. If you try to sneak it onto the customer's bill without them knowing, they won't trust your product!

https://twitter.com/p_piotti/status/1449136968936267778?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw.

36.    As another consumer on Twitter aptly describes the deception,

> It's *how* they're passing along higher costs that's at issue. Raising the list price is fairer to consumers. Tacking on a sneaky fee is not

https://twitter.com/Davidlaz/status/1449101569295716352?s=20&t=XWxnQ2m6WsHRwO5xzy_dKw.

**D. Plaintiff's Experience**

37.    Plaintiff Sonia Zelaya made a purchase of paint at a Sherwin-Williams store located in Montclair, California on November 24, 2021, in the total amount of $43.21, and on December 18, 2021, in the amount of $27.59.

38.    Ms. Zelaya made her purchases of paint relying upon price tags and displays provided in-store.

39.    Without her knowledge, Ms. Zelaya was assessed a 4% Surcharge for each gallon.

40.     At no time prior to her purchase did Ms. Zelaya view any sign or disclosure informing her that the 4% Surcharge would be added to her purchases.

41.     Accordingly, at no time prior to her purchase did Ms. Zelaya realize that Sherwin-Williams would furtively affix a price increase on her transaction.

42.     Had Ms. Zelaya known that the Surcharge would be assessed on her purchase, she would not have purchased her paint from Sherwin-Williams.

<u>**CLASS ALLEGATIONS**</u>

43.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of Classes of similarly situated persons defined as follows:

**California Class:**
All persons in California who, within the applicable statute of limitations preceding the filing of this action, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

**Nationwide Class:**
All persons who, within the applicable statute of limitations, made a purchase at a Sherwin-Williams store and was charged a 4% Surcharge.

44.     Excluded from the Classes are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including, without limitation, the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

45.     **Numerosity**: At this time, Plaintiff does not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus are so numerous that joinder of all members is impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

46.    **Commonality**:  There are questions of law or fact common to the Classes, including the following, without limitation:

47.    Whether during the class period, Defendant deceptively engaged in a bait- and-switch scheme with customers regarding its 4% Surcharge that it assessed on all purchases made in its Sherwin-Williams stores;

48.    Whether during the class period, Defendant made material omissions regarding its 4% Surcharge;

49.    Whether during the class period, Defendant failed to sufficiently inform reasonable customers of its 4% Surcharge;

50.    Whether Defendant's alleged misconduct misled or had the tendency to mislead customers;

51.    Whether Defendant's alleged conduct constitutes violations of the laws asserted;

52.    Whether Plaintiff and the Classes were harmed by Defendant's misrepresentations and omissions;

53.    Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

54.    Whether an injunction is necessary to prevent Defendant from continuing to deceptively assess the hidden 4% Surcharge on customers' purchases at its Sherwin-Williams stores and/or to order Defendant to sufficiently disclose to customers the 4% Surcharge prior to making their purchases.

55.    **Typicality**: Like Plaintiff, many other customers made purchases at a Sherwin-Williams store without understanding that the 4% Surcharge would be added to her transactions. Plaintiff's claims are typical of the claims of the Classes because Plaintiff and each Class member was injured by Defendant's false representations and omissions about the 4% Surcharge.  Plaintiff and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive, and misleading representations.  Plaintiff's claims and the claims of the Classes emanate from the

1   same legal theory, Plaintiff's claims are typical of the claims of the Classes, and, therefore, class

2   treatment is appropriate.

3       56.   **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has

4   retained counsel competent and experienced in prosecuting and resolving consumer class actions.

5   Plaintiff will fairly and adequately represent the interests of the Classes and does not have any

6   interests adverse to those of the Classes.

7       57.   **The Proposed Classes Satisfy the Prerequisites for Injunctive Relief**. Defendant

8   has acted or refused to act on grounds generally applicable to the Classes, thereby making

9   appropriate final injunctive and equitable relief with respect to the Classes as a whole.  Plaintiff

10  remains interested in making purchases at Sherwin-Williams stores in the future; there is no way for

11  them to know when or if Defendant will cease deceptively misrepresenting the true cost of each

12  purchase transaction through affixing the 4% Surcharge.

13      58.   Specifically, Defendant should be ordered to provide customers with sufficient

14  disclosures about the 4% Surcharge *prior* to their decision to make purchases at Sherwin-Williams

15  locations and not when it is too late for the customer to rescind their purchase.

16      59.   Defendant's ongoing and systematic practices make declaratory relief with respect to

17  the Classes appropriate.

18      60.   **The Proposed Classes Satisfy the Prerequisites for Damages**. The common

19  questions of law and fact enumerated above predominate over questions affecting only individual

20  members of the Classes, and a class action is the superior method for fair and efficient adjudication of

21  the controversy.  The likelihood that individual members of the Classes will prosecute separate

22  actions is remote due to the extensive time and considerable expense necessary to conduct such

23  litigation, especially when compared to the relatively modest amount of monetary, injunctive, and

24  equitable relief at issue for each individual Class member.

25
        **<u>FIRST CLAIM FOR RELIEF</u>**
        **Violation of California's Unfair Competition Law ("UCL")**
26      **Cal. Bus. & Prof. Code § 17200, *et seq.***
        **(Asserted on Behalf of the California Class)**
27

28

61.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

62.     California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." Sherwin-Williams' conduct related to deceptively representing prices on products and adding a deceptive "Supply Chain Charge" violates each of the statutes' "unfair," "unlawful," and "fraudulent" prongs.

63.     The UCL imposes strict liability. Plaintiff need not prove that Sherwin-Williams intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

64.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

65.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

66.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

67.     Sherwin-Williams committed unfair and fraudulent business acts and practices  in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting in-store that it provides products at the prices listed when, in reality, it hides price inflation through the assessment of an additional and deceptive "Supply Chain Charge."

68.     Defendant's acts and practices offend an established public policy of price transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities  that  are substantially injurious to consumers.

69.     The harm to Plaintiff and the Classes outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

FIRST AMENDED CLASS ACTION COMPLAINT

70.     Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiff's Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5), (a)(9), and (a)(20) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that Sherwin-Williams deceptively represents that it provides products for the listed prices; in reality, however, this marketing message is false because Sherwin-Williams's so-called "Supply Chain Charge" is assessed on all purchases.

71.     Sherwin-Williams' business practices have misled Plaintiff and the proposed Classes and will continue to mislead them in the future.

72.     Plaintiff relied on Defendant's misrepresentations about the falsely advertised cost of purchasing products from Defendant.

73.     By falsely marketing the true costs of products, Sherwin-Williams deceived Plaintiff and Class members into making purchases they otherwise would not make.

74.     Had Plaintiff known the truth of the "Supply Chain Charge," i.e., that Sherwin-Williams' "Supply Chain Charge" was in fact a scheme to secretly inflate prices, she would have purchased products from another store.

75.     As a direct and proximate result of Sherwin-Williams' unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into purchasing products.

76.     As a result of its unfair, fraudulent, and unlawful conduct, Sherwin-Williams has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

77.     Additionally, Plaintiff seeks injunctive relief. Absent such relief, Defendant is free to reinstate the Supply Chain Charge at any time. Plaintiff intends to keep shopping at Sherwin-Williams' stores. Absent injunctive relief, Plaintiff cannot rely on the price representations made at Sherwin-Williams' stores because Sherwin-Williams may add a Supply Chain Charge at any time.

## SECOND CLAIM FOR RELIEF
### Violation of the California's Consumer Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*

**(Asserted on Behalf of the California Class)**

78.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

79.     This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiff and each member of the proposed Classes are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of products to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The products purchased by Plaintiff and the Classes are "goods" within the meaning of California Civil Code § 1761(a).

80.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Classes which were intended to result in, and did result in, the sale of Sherwin-Williams products:

      a.  "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

      b.  "Advertising goods or services with intent not to sell them as advertised" (a)(9); and

      c.  Section 1770(a)(20) provides that sellers cannot "[a]dvertis[e] that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in the advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product." Cal. Civ. Code § 1770(a)(20).

81.     Specifically, Sherwin-Williams advertises to customers that its products are a specific price, but this is false because Defendant imposes hidden price inflation on consumers by covertly applying a "Supply Chain Charge" on purchases that is actually a component of the price of the product.

82.     At no time does Sherwin-Williams disclose the true nature of its product prices to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

83.     Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Defendant did not provide the relief requested. Plaintiff therefore seeks actual, punitive and statutory damages, as appropriate against Defendant.

84.     Additionally, Plaintiff seeks injunctive relief. Absent such relief, Defendant is free to reinstate the Supply Chain Charge at any time. Plaintiff intends to keep shopping at Sherwin-Williams' stores. Absent injunctive relief, Plaintiff cannot rely on the price representations made at Sherwin-Williams' stores because Sherwin-Williams may add a Supply Chain Charge at any time.

**THIRD CLAIM FOR RELIEF**
**Breach of Contract**
**(Asserted on Behalf of the Classes)**

85.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

86.     Plaintiff and Sherwin-Williams have contracted for the sale and purchase of consumer products such as paint, as embodied by Defendant's pricing representations made at each of its stores.

87.     Defendant breached the terms of its contract with customers by charging an additional 4% more for each item purchased at its Sherwin-Williams stores, over and above the contracted for listed price on each item.

88.     Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

89.     Plaintiff and members of the Classes have sustained damages as a result of Defendant's breach of the contract.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Asserted on Behalf of the Classes)**

90.     Plaintiff repeats and re-alleges the above allegations as if fully set forth herein.

91.     This count is brought solely in the alternative. Plaintiff acknowledges that the breach of contract claim cannot be tried along with unjust enrichment.

92.     To the detriment of Plaintiff and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

93.     Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

94.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained monies received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff on behalf of herself and the Classes seek judgment in an amount to be determined at trial, as follows:

(a)     For an order enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

(h)     Awarding such other and further relief as this Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all claims so triable.

DATED: July 7, 2023

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EDELSBERG LAW PA**

*/s/ Scott Edelsberg*
Scott Edelsberg (SBN 330090)
1925 Century Park East, Suite 1700
Los Angeles, CA 90067
Tel: 305-975-3320
Email: scott@edelsberglaw.com

Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
**KALIELGOLD PLLC**
6 1100 15th Street., NW, 4th Floor
Washington, D.C. 20005
7 Tel: (202) 350-4783

Sophia Goren Gold (SBN 307971)
sgold@kalielgold.com
**KALIELGOLD PLLC**
950 Gilman Avenue, Suite 200
Berkeley, California 94710
Tel: (202) 350-4783

*Attorneys for Plaintiff and the
Proposed Class*

FIRST AMENDED CLASS ACTION COMPLAINT